UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------------X
ANTHONY RUGER,
Plaintiff,                                                                     Civil Action No.


      -against-                                       **COMPLAINT**

INTEL CORPORATION, and                                       Plaintiff Demands A
ROBERT KNOLLENBERG, *individually*.                          Trial by Jury
Defendants.
------------------------------------------------------------------------------X

Plaintiff ANTHONY RUGER (herein referred to as "RUGER") respectfully alleges the following against the above named Defendants upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and seeks damages to redress the injuries Plaintiff suffered as a result of unlawful discrimination, retaliation, and termination by Defendant solely due to his disability.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under the American with Disabilities Act. The Court also has supplemental jurisdiction over the State Causes of Action.

3. Jurisdiction of this action is also conferred upon the Court as this action involves Diversity of Citizenship under 28 U.S.C. §1332.

4. Plaintiff is an adult male domiciled in the Commonwealth of Pennsylvania.

5. Defendant INTEL CORPORATION is a foreign business corporation duly existing under the laws of the State of Delaware with its principal place of business in Arizona.

6. Defendant ROBERT KNOLLENBERG is an adult male domiciled in Texas.

7. The matter contested exceeds $75,000.

8. Proper venue is based on the fact that any and all events listed and at issue took place in Bucks County within the Eastern District of the Commonwealth of Pennsylvania.

9. On or around September 20, 2016, Plaintiff dual-filed charges with the EEOC and PHRC against Defendant as set forth herein.

10. On or around August 8, 2017, the EEOC issued Plaintiff a Right to Sue.

11. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## PARTIES

12. Claimant ANTHONY RUGER (hereinafter also referred to as Claimant and "RUGER") is an individual male who is a resident of the Commonwealth of Pennsylvania.

13. At all times material, Respondent INTEL CORPORATION (hereinafter referred to as Respondent or "INTEL") is a foreign business corporation duly existing under the laws of the State of Delaware.

14. At all times material, Respondent INTEL's website describes the corporation, stating, "As an electronics industry innovator and a leader in corporate responsibility, we look for ways to apply our technology to address global challenges while serving as a role model for how companies should operate."

15. At all times material Respondent Robert Knollenberg (hereinafter referred to as Respondent or "KNOLLENBERG") was and still is an employee for Respondent INTEL.

16. At all times material, Respondent KNOLLENBERG was employed as a Senior Manager, (NA Tier II Business Support) for Respondent INTEL.

17. At all times material, Respondent KNOLLENBERG held supervisory authority over Claimant.

## MATERIAL FACTS

18. In or around September 2011, Claimant began working as a SIEM Technical Support (Tier 2) for McAfee at an annual salary of $88,000.00 plus quarterly and yearly performance bonuses. Mr. Ruger's compensation package totaled over $96,000.00 per year.

19. On or around July 1, 2015, Respondent INTEL purchased McAfee and absorbed the business under the "INTEL brand."

20. At or around the same time, Claimant retained his position, salary, benefits, and became an INTEL employee.

21. In or around September 2015, Claimant suffered multiple personal tragedies including one suicide, one attempted suicide, and two deaths all of people closely related to him. Claimant began to have a burning sensation in his stomach and, after consulting his physician, began meeting with a psychologist.

22. In or around September 2015, Claimant was also experiencing symptoms related to a physical medical condition resulting in severe pain and tingling in both of his hands that lasted for multiple weeks at a time.

23. Claimant met with four separate orthopedic specialists before he was ultimately diagnosed with Trigger Point Syndrome. Trigger Point Syndrome occurs in people, like Claimant, who previously suffered from carpal tunnel syndrome and had surgery to correct it. Trigger points begin to cause intense pain in the wrists and hands. The disease is treated with steroid shots, but Claimant could only receive them every three months, during which time the excruciating pain would recur.

24. While Claimant remained qualified for his position, Claimant's Trigger Point Syndrome severely limited his ability to type and complete the computer assignments for his position. It would take Claimant additional time, depending on the amount of typing required on a particular day.

25. In or around early fall 2015, Claimant missed two mandatory training sessions due to his ongoing medical issues. He was told by Respondent KNOLLENBERG that all required training programs appeared on the McAfee University training system and instructed Claimant to keep an eye on that page to ensure training compliance in the future.

26. Through the remainder of 2015 and the first four months of 2016 Claimant consistently reviewed this web page to ensure all required training sessions were completed.

27. In or around September 2015, Respondents made changes to the processes used by Claimant and the other Technical Support Engineers. These changes related to how they closed out tickets, or customer complaints that were called into the technicians.

28. Respondents told their employees, including Claimant, that they were not permitted to close out any tickets unless a KB article with the solution was completed and included with the ticket closing.

29. As a result, all of Respondents' employees, including Claimant, were required to type an independent report for every ticket before it was closed. Absent a completed report, the ticket would remain open.

30. This change drastically increased the amount of typing required of Claimant, which exacerbated the excruciating pain he was suffering in his hands.

31. In or around the beginning of October 2015, Claimant's psychologist diagnosed him with severe depression.

32. In or around in October 2015, Claimant explained to Respondent KNOLLENBERG that he had personal medical problems related to depression. In addition, he explained that typing the newly required KB reports for each ticket was extremely difficult to accomplish. He explained that typing the reports was increasing the excruciating pain and tingling that he was having related to his Trigger Point Syndrome.

33. Respondents not only ignored the fact that Claimant was suffering from two distinct disabilities and failed to provide a reasonable accommodation, but deliberately set out to terminate Claimant due to those disabilities.

34. In or around November 2015, Plaintiff was alerted that there would be a weekly "Insight Report" that would run at 6:00 P.M. on Friday evenings to check for any tickets that had not been touched for over seven (7) days.

35. Claimant had been carrying between eight (8) and ten (10) open tickets because he was unable to complete the KB articles, which were required prior to closing the tickets.

36. Due to this new procedure, Claimant got flagged by the Friday Insight report three times. Two of the times fell between the months of September and December when Claimant's symptoms had begun to peak.

37. Each time Claimant was flagged, he had a one-on-one meeting with his manager.

38. At or around the beginning of January 2016, Claimant had a one-on-one meeting with Respondent KNOLLENBERG.

39. During that meeting, Respondent KNOLLENBERG told Claimant that he had two choices: Claimant could either accept a severance package worth six months of his salary and benefits, or he could go on a performance improvement plan.

40. Claimant liked his job and wanted to keep his job with Respondent INTEL. Claimant told Respondent KNOLLENBERG that he would prefer to be put on the performance improvement plan.

41. Respondent KNOLLENBERG pressured Claimant to "really consider" his options because it would be difficult for Claimant to succeed and keep his job if he opted to go on the performance improvement plan.

42. Respondent KNOLLENBERG told Claimant that if he missed even one correspondence on any ticket, he would be terminated.

43. Determined to keep his job, Claimant again rejected the severance package and accepted the performance improvement plan.

44. Claimant reminded Respondent KNOLLENBERG that he was having problems completing the tickets with the KB reports due to his depression and the Trigger Point Syndrome. Claimant again asked Respondent KNOLLENBERG for a reasonable accommodation.

45. The only accommodation offered was an ergonomic key board to assist Claimant and potential relieve some of the excruciating pain that Claimant was experiencing due to his Trigger Point Syndrome.

46. Respondents failed to participate in a meaningful conversation regarding Claimant's request for a reasonable accommodation.

47. At that time, Respondent KNOLLENBERG told Claimant that the tickets could be closed without completing the KB reports.  Respondent KNOLLENBERG stated, "I already told you that."  At no time did Respondent KNOLLENBERG tell Claimant that he was capable of closing a ticket without completing the corresponding KB report.

48. Following this meeting with Respondent KNOLLENBERG, Claimant asked his co-workers, including Guy Burroughs, if they were aware that tickets could be closed absent the KB reports.  Claimant's co-workers confirmed what Claimant had previously believed, that tickets could be closed without completing the reports.

49. In or around January 2015, Respondent KNOLLENBERG exponentially increased Claimant's work load while on the performance improvement plan.  Claimant not only had to handle the customer complaints, close out the tickets, and complete the KB reports, but also had to complete additional fields indicating all customer follow-up, and show all notes from phone calls, follow-up calls, and follow-up appointments.

50. As a result, the amount of typing to complete the function of Claimant's job duties again drastically increased.

51. Respondents inundated Claimant with a high volume of work, despite being made aware of his medical disabilities and requests for a reasonable accommodation.

52. Despite these adversities, Claimant surpassed the required 90% audit requirement and met the criteria on 100% of his tickets during the cap period.

53. Claimant also completed notes for all tickets, and met Respondent's reporting requirements for his submissions.

54. Claimant was not flagged on the Friday night "Insight Reports." No other Tier 2 engineer accomplished these results during the same time period nor were they required to do the additional work required of the performance improvement plan.

55. Claimant had regular meetings through the first four months of 2016 with Respondent KNOLLENBERG.

56. In or around the beginning of April 2016 two weeks before Claimant's performance improvement plan was scheduled to end, Respondent KNOLLENBERG told Claimant, "It looks like you are going to breeze right through this thing" (referring to the performance improvement plan).

57. Two weeks later, on or around April 25, 2016, Claimant was wrongfully and unlawfully terminated due to his disability.

58. Respondents wrongfully and illegally terminated him due to Claimants disabilities and in retaliation for Claimant's continued requests for a reasonable accommodation.

59. During the termination meeting, Respondent KNOLLENBERG informed Claimant that he was being terminated because he had missed two "required" training sessions, and that he had missed completing lunch and learn topics during his performance improvement plan.

60. Claimant responded that he had completed all required training sessions listed on the McAfee website. Respondents stated that the training sessions he missed were not on McAfee university site, but were instead embedded in earlier emails.

61. The two training sessions consisted of a 5 minute power point that had to be reviewed, and the other was a disclosure that had to be signed by Claimant and given to his supervisor.

62. Neither training was a critical aspect of the capabilities required to complete the essential functions of Claimant's job.  Rather, these training sessions were used merely as a pretextual reason for Claimant's termination.

63. As a result of Respondents' actions, Claimant felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

64. As a result of the acts and conduct complained of herein, Claimant has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Claimant also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Claimant has further experienced severe emotional and physical distress.

65. As Respondents' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Claimant demands Punitive Damages as against Defendants.

66. The above are just some examples of some of the discrimination and retaliation to which Respondents subjected Claimant .

67. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER THE AMERICANS WITH DISABILITIES ACT

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

69. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

70. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

71. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability.

72. Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION
### UNDER THE AMERICANS WITH DISABILITIES ACT

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by

this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

75. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A THREE CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

78. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability.

79. Plaintiff hereby states his claim against Defendant under all of the applicable paragraphs of the PHRA § 955.

## AS A FOUR CAUSE OF ACTION
## FOR RETALIATION
## UNDER STATE LAW

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

82. Defendant engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of his employer.

## AS A FIVE CAUSE OF ACTION
## FOR AIDING & ABETTING
## UNDER STATE LAW

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

85. Defendant engaged in an unlawful discriminatory practice in violation of PHRA §955(e)

by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania　　　DEREK SMITH LAW GROUP, PLLC
　　　　November 1, 2017　　　　　　　　*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　By: /s/ Samuel C. Wilson
　　　　　　　　　　　　　　　　　　　　　Samuel C. Wilson, Esq.
　　　　　　　　　　　　　　　　　　　　　1845 Walnut Street, Suite 1600
　　　　　　　　　　　　　　　　　　　　　Philadelphia, Pennsylvania 19103
　　　　　　　　　　　　　　　　　　　　　(215) 391-4790